Omar CRESPO, et al., Plaintiffs

v.

WFS FINANCIAL INC., Defendant.

No. 1:07 CV 430.

United States District Court,
N.D. Ohio,
Eastern Division.

Sept. 30, 2008.

John J. Roddy, Roddy Klein & Ryan, Boston, MA, Mark A. Chavez, Chavez & Gertler, Mill Valley, CA, Ronald I. Frederick, Law Office of Ronald Frederick, Cleveland, OH, for Plaintiffs.

James R. McGuire, Morrison & Foerster LLP, Frances F. Goins, Max W. Thomas, Ulmer & Berne, Cleveland, OH, Michael J. Agoglia, Wendy M. Garbers, Morrison & Foerster, San Francisco, CA, for Defendant.

### ORDER

SOLOMON OLIVER, JR., District Judge.

Plaintiffs Omar Crespo and his wife Lorna Crespo (together, "Plaintiffs" or "Cres-

po") filed the above-captioned lawsuit, on behalf of themselves and all others similarly situated, alleging that Defendant WFS Financial Inc.[1] ("Defendant" or "WFS") violated the Ohio Uniform Commercial Code ("Ohio UCC") and the Retail Installment Sales Act ("RISA") by not providing all required information in their post-repossession notice. Now pending before the court are Defendant's Motion to Dismiss (ECF No. 12) and Defendant's Motion for Costs Under Federal Rule of Civil Procedure Rule 41(d) ("Motion for Costs") (ECF No. 13). For the reasons stated below, the court grants both Motions.

## I. FACTS AND PROCEDURAL HISTORY

It is undisputed that on or about January 8, 2001, Plaintiffs entered into a purchase money loan with WFS to finance the purchase price of a used car. Plaintiffs do not dispute that, at some point thereafter, WFS was entitled to repossess, and did lawfully repossess, the car.

On July 26, 2001, WFS sent a notice to Plaintiffs, which included a two-page "Notice of Our Plan to Sell Property" and a one-page "Notice of Intention to Dispose of Motor Vehicle." (Pls.' Ex. C to Am. Compl., ECF No. 29–4.) The court will refer to this combined notice as a "post-repossession notice" or the "Notice." The first page of the Notice stated that WFS would sell the repossessed car at a public sale beginning on August 16, 2001, at 8:00 a.m. at Adesa Cleveland. (*Id.* at 1.) The second page of the Notice stated that WFS would sell the car at a private sale sometime after August 16, 2001. (*Id.* at 2.) The third page of the Notice stated that the estimated Total Repossession Charges As-

sessed were $350.00 and that the estimated Required Minimum Repossession Payment was $25.00. (*Id.* at 3.) Plaintiffs allege that WFS sold the car on a different date than stated in the Notice, without informing Plaintiffs of the actual sale date. It is undisputed that, after the car was sold, there was a deficiency balance purportedly owed by Plaintiffs. Plaintiffs argue that they do not owe this deficiency balance because the Notice violated the Ohio UCC and RISA.

On February 15, 2007, Plaintiffs filed the instant lawsuit, and on December 19, 2007, Plaintiffs filed an Amended Complaint. Plaintiffs allege the following individual and class action claims: (1) Defendant violated O.R.C. §§ 1317.12 and 1317.16, which regulate a secured party's right to dispose of collateral following a default, by issuing a post-repossession notice to Plaintiffs that does not contain mandatory statutory disclosures and which states an improper amount due to redeem the repossessed vehicle; (2) Defendant violated O.R.C. § 1309.47(B)(2)(c),(d) (for Notices issued prior to July 1, 2001)[2] and/or O.R.C. §§ 1309.613, 1309.614, and/or 1309.626(D) (for Notices issued after July 1, 2001) by failing to list, in the post-repossession notice, a street address of the place of sale, and also simultaneously stating that the vehicle would be sold by public auction and by private sale; and (3) Defendant was unjustly enriched by wrongfully collecting monies to which it is not entitled due to its noncompliance with the above-mentioned notice requirements. (Compl., ECF No. 1; Am. Compl., ECF No. 29.) Plaintiffs seek declaratory and injunctive relief, compensatory and statutory damages, and restitution.

---

1. Defendant contends that WFS Financial Inc. was renamed Wachovia Dealer Services, Inc., in February, 2007. (Def.'s Mot. Dismiss at 2 n. 1.) Plaintiffs do not respond to this assertion.

2. O.R.C. § 1309.47 was repealed effective July 1, 2001.

Defendant filed the pending Motion to Dismiss (ECF No. 12), arguing that Plaintiffs have failed to state a claim upon which relief may be granted because Plaintiffs' state law claims are preempted by federal law. Defendant also filed the pending Motion for Costs (ECF No. 13), seeking reimbursement of costs that it incurred in defending an allegedly identical state action that Plaintiffs filed against Defendant, and which Plaintiffs voluntarily dismissed two years prior to filing the instant case.

## II. DISMISSAL STANDARD

The court examines the legal sufficiency of the plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6). *See Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993). The Supreme Court in *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007), recently clarified what the plaintiff must plead in order to survive a Rule 12(b)(6) motion. When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the Complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964–65. Additionally, even though a Complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.*

## III. MOTION TO DISMISS

### A. General Preemption Principles

Under the Supremacy Clause, federal law preempts state law where Congress so intends. U.S. Const, Art. VI, cl. 2; *Fid. Fed. Savs. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 152, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). Here, Defendant argues that federal law has implicitly preempted Ohio law by indicating "an intent to occupy exclusively an entire field of regulation." *Bibbo v. Dean Witter Reynolds, Inc.,* 151 F.3d 559, 562 (6th Cir.1998). Specifically, Defendant contends that 12 C.F.R. § 560.2 preempts the state laws under which Plaintiffs' claims are pled. The Supreme Court has held that "federal regulations have no less pre-emptive effect than federal statutes." *de la Cuesta,* 458 U.S. at 153–54, 102 S.Ct. 3014. To determine whether federal regulations preempt state law, the court inquires "whether the agency intended to pre-empt state law, and, if so, whether the agency possessed the power to do so." *Bibbo,* 151 F.3d at 563 (citing *de la Cuesta,* 458 U.S. at 154, 102 S.Ct. 3014). Here, the parties disagree as to whether the relevant agency intended to preempt state law, but neither party challenges the agency's authority to do so.

### B. General HOLA Principles

HOLA was enacted in the 1930s to create a system of federal savings and loan associations [3] in order to provide emergency relief for the widespread home mortgage indebtedness at that time. *See de la*

---

**3.** Defendant states that during the relevant period, "WFS was the operating subsidiary of Western Financial Bank, a federal savings association, and was engaged exclusively in the business of automobile financing." (Def.'s Mot. at 10.) Plaintiffs do not dispute this assertion. As a subsidiary, WFS is entitled to the same protection from preempted state laws as its parent federal savings association. 12 C.F.R. § 559.3(n); *WFS Fin., Inc. v. Dean,* 79 F.Supp.2d 1024, 1026 (W.D.Wis. 1999).

*Cuesta,* 458 U.S. at 159–60, 102 S.Ct. 3014. HOLA is currently regulated by the Office of Thrift Supervision ("OTS"), which has authority to promulgate regulations that "provide for the organization, incorporation, examination, operation, and regulation of associations to be known as Federal savings associations (including Federal savings banks)." 12 U.S.C. § 1464(a)(1).

OTS regulations indicate that the agency has "preempt[ed] state laws affecting the operations of federal savings associations" and that OTS "occupies the entire field of lending regulation for federal savings associations." 12 C.F.R. § 560.2(a). OTS has defined "the field of lending regulation" as "encompass[ing] all laws affecting lending by the federal thrifts, except certain specified areas such as basic real property, contract, commercial, tort, and criminal law." 61 Fed.Reg. 50951, 50,965.

12 C.F.R. § 560.2 provides, in pertinent part:

(a) Occupation of field. Pursuant to sections 4(a) and 5(a) of the HOLA, 12 U.S.C. 1463(a), 1464(a), OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA. To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part. For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.

(b) Illustrative examples. Except as provided in § 560. 110 of this part, the types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding:

. . .

(4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;

. . .

(7) Security property, including leaseholds;

. . .

(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring

creditors to supply copies of credit reports to borrowers or applicants;

. . .

(c) State laws that are not preempted. State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:

(1) Contract and commercial law;

. . . and

(6) Any other law that OTS, upon review, finds:

(i) Furthers a vital state interest; and

(ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

No case law directly answers the question of whether OTS's preemption regulation preempts Plaintiffs' claims in the instant case. Some of the cases that Plaintiffs cite are inapposite either because they precede the enactment of § 560.2 or because they do not discuss preemption under this regulation. *See, e.g., Cliff v. Payco Gen. Am. Credits, Inc.,* 363 F.3d 1113 (11th Cir.2004) (finding no preemption under the Higher Education Act); *Chevy Chase Bank v. McCamant,* 204 W.Va. 295, 298, 512 S.E.2d 217 (W.Va.1998) (finding no preemption under 12 C.F.R. § 545.2, which preempts the operations of federal associations).

Furthermore, all of the cases cited by the parties, except one, relate to state laws dissimilar from those at issue here. The only case to consider whether HOLA preempts state law with regard to post-repossession notices is *WFS Financial, Inc. v. Superior Court,* 140 Cal.App.4th 637, 44 Cal.Rptr.3d 561 (2006), on which Defendant relies heavily. The court in

*WFS Financial* found that a state law similar to the one in the instant case, governing the disclosures required in a post-repossession notice, was preempted by HOLA. However, the opinion was automatically depublished pursuant to California Rule of Court 8.1105(e), which provides that an appellate opinion is no longer published where the state supreme court grants review. In addition, the California Supreme Court vacated the appellate decision at the parties' request in light of their settlement. *See WFS Fin., Inc. v.Super. Ct.,* 53 Cal.Rptr.3d 801, 150 P.3d 692 (Cal. 2007). As such, the case is not citable by California courts, and this court finds that it does not constitute persuasive authority.

### C. No Presumption Against Preemption

■ Plaintiffs argue that, because their claims do not fall under § 560.2(b) and they do not affect lending, a presumption against preemption applies. As discussed below, however, the court finds that Plaintiffs' claims are expressly preempted by § 560.2(b)(5) and (9). Furthermore, courts have expressly held that no presumption against preemption applies to claims under HOLA. *Silvas v. E*Trade Mortg. Corp.,* 514 F.3d 1001, 1006 (9th Cir.2008) (quoting *Bank of Am. v. City & County of S.F.,* 309 F.3d 551, 559 (9th Cir.2002)) ("[B]ecause there has been a 'history of significant federal presence' in national banking, the presumption against preemption of state law is inapplicable.") (internal citation omitted). The Ohio Supreme Court stated:

The presumption against preemption is just that—a presumption—and it does not apply where the clear and manifest purpose of the statute or, in this case, regulation is to the contrary. Thus, when the examined federal law contains an express preemption clause, as is the case with Section 560.2, the question of

state-law displacement depends in the first instance not upon any presumption but upon the text of that clause. *Pinchot v. Charter One Bank,* 99 Ohio St.3d 390, 394, 792 N.E.2d 1105 (Ohio 2003). Therefore, the court finds that no presumption against preemption exists here. In fact, contrary to Plaintiffs' contentions, the OTS has expressly held that, when analyzing whether HOLA preempts a particular state law, "[a]ny doubt should be resolved in favor of preemption." 61 Fed.Reg. 50951, 50,966–67.

In addition, despite Plaintiffs' argument to the contrary, a state law may be preempted even where no federal law exists to replace it. As a California Appeals court stated:

> [§ 560.2] is intended to preempt all state laws purporting to regulate any aspect of the lending operations of a federally chartered savings association, whether or not OTS has adopted a regulation governing the precise subject of the state provision. If there is no federal restriction imposed on a particular practice, the associations have been given "maximum flexibility" to operate as they see fit, so long as they conform with more general norms of honesty and compliance with contractual obligations.

*Lopez v. World Savs. & Loan Assn.,* 105 Cal.App.4th 729, 738, 130 Cal.Rptr.2d 42 (2003).

## D. Defendant Did Not Voluntarily Assume Duties of State Law

▮ Plaintiffs argue that their claims are not preempted because WFS voluntarily contracted to follow state law with regard to the post-repossession notices. In support of their argument, Plaintiffs assert that the "Default and Remedies" section of the loan agreement between WFS and Plaintiffs stated that if Plaintiffs defaulted, WFS could "sell, lease or dispose of the Property *as provided by law.*" (ECF No. 23–2, at 2.) Plaintiffs argue that this statement must refer to *state* law because only state law exists regarding post-repossession notices. In addition, the court notes that WFS's Notice of Intention to Dispose of Motor Vehicle states the following: "If you [the debtor] do not remit the payment by the 'Last Date for Payment,' we may exercise our rights against you *as applicable under state law.*" (Pl.'s Ex. C, ECF No. 1–5, at 3) (emphasis added.)

The court finds that Plaintiffs' argument is not well-taken. First, the language in the "Default and Remedies" section does not specify that it relates to state law. Also, in WFS's Notice of Intention to Dispose of Motor Vehicle, the applicable language merely states that WFS *may* exercise its rights under state law; however, the Notice does not require that only state law applies or that WFS would only pursue action under state law. In addition, Defendant points out that the "Applicable Law" section of the loan agreement that Plaintiffs quote states that the loan is subject to federal law wherever applicable:

> This note and the loan evidenced by this note, any security agreement securing this note, are made under, and shall be governed and construed by, the laws, rules and regulations of the United States of America; and, to the extent that federal laws, rules and regulations are inapplicable, this note and the loan evidenced by this note, any security agreement securing this note, shall be governed and construed by the laws of the State of Ohio (without giving effect to any choice of law rule that would cause the application of the laws of any state other than the State of Ohio to the rights and duties of the parties).

*(Id.)*

Plaintiffs cite two cases for the proposition that a defendant's voluntary assumption of state law can defeat federal pre-

emption. However, in each of those cases, the courts held that the plaintiffs' breach of contract claims were not preempted, but that the other claims were preempted. *See Am. Airlines v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995); *Michael v. Shiley, Inc.,* 46 F.3d 1316 (3d Cir.1995) (breach of express warranty); *Wells v. Chevy Chase Bank, F.S.B.,* 377 Md. 197, 832 A.2d 812 (Md.2003). Unlike the plaintiffs in *American Airlines, Michael,* or *Wells,* the instant Plaintiffs have not brought a breach of contract claim. Therefore, the court finds that Defendant did not voluntarily contract to follow state law with regard to the post-repossession notices.

### E. OTS's Specific Method of Analyzing HOLA Preemption Issues

Plaintiffs argue that their claims—which involve how specific an address must be provided to inform a debtor where his or her repossessed property will be sold to satisfy a defaulted loan; whether a loan must specify whether the sale will be public or private; and what repossession fee amount a debtor is required to pay—come into play *after* credit is granted. In support of the proposition that this timing precludes preemption, Plaintiffs cite *Hussey–Head v. World Savs. & Loan Ass'n,* 111 Cal.App.4th 773, 4 Cal.Rptr.3d 171 (2003) and *Alkan v. Citimortgage, Inc.,* 336 F.Supp.2d 1061 (N.D.Cal.2004). The courts in both *Hussey–Head* and *Alkan* found that the state laws at issue did not constitute lending regulations, and therefore were not preempted by HOLA, on the ground that the disputed state law "does not come into play until after a loan is made or credit otherwise extended, and it does not affect the manner in which the lender services or maintains the loan; as a result, the California statutes are not inconsistent with the federal Home Owners' Loan Act." *Hussey–Head,* 111 Cal.App.4th at 782, 4 Cal.Rptr.3d 171 (emphasis added); *see Alkan,* 336 F.Supp.2d at 1064. The court finds that *Hussey–Head* and *Alkan* are distinguishable because they involve state laws distinct from the state laws at issue here. The laws in *Hussey–Head* and *Alkan* related to the requirement that credit information be reported completely and accurately, whereas the state laws in the instant case relate to the disclosures that must be made related to the sale of repossessed property. For obvious reasons, a finding that HOLA preempts one type of state regulation does not speak to whether HOLA preempts an entirely different type of regulation.[4]

In addition, Defendant points out that the Seventh Circuit has included "foreclos[ure] in the event of a default" as part of the loan "servicing" process. *In re Ocwen Loan Servicing LLC Mortgage Servicing Litig.,* 491 F.3d 638, 641 (7th Cir. 2007). Consequently, Defendant argues that, unlike the laws in *Hussey–Head* and *Alkan,* the state laws in the instant case do "affect the manner in which the lender services or maintains the loan," and thus constitute lending regulations, which are therefore preempted by HOLA. However, the court declines to determine whether *Ocwen* allows a finding that the state laws at issue here constitute lending regulations because, according to the OTS guidelines regarding how to analyze preemption under HOLA, the court need not reach this question.

OTS set forth specific instructions on how to analyze whether HOLA preempts a state law, as follows:

---

4. For the same reason, the fact that the court in *Konynenbelt v. Flagstar Bank, F.S.B.,* 242 Mich.App. 21, 34, 617 N.W.2d 706 (Mich.App. Ct.2000), found that HOLA did not preempt a law that regulated the "recording fee" that a bank charged for paying the mortgage early is not helpful to the instant case.

When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

61 Fed.Reg. 50951, 50,966–67; *see Silvas,* 514 F.3d at 1006. Consequently, where a law is found to fall under 560.2(b), which lists examples of the types of laws preempted by 560.2(a), it is expressly preempted and the preemption analysis ends. As discussed below, the court finds that the state laws at issue here are expressly preempted by 560.2(b). Therefore, because this ends the preemption analysis, Plaintiffs' claims cannot be saved from preemption through a finding that the state laws do not affect lending or that they fall under section (c).

### F. § 560.2(b) Analysis

Plaintiffs first point out that § 560.2(b) does not list laws governing repossession. However, § 560.2(b) is not meant to be exhaustive. *Pinchot v. Charter One Bank,* 99 Ohio St.3d 390, 399, 792 N.E.2d 1105 (Ohio 2003). Furthermore, Defendant argues that several subsections of § 560.2(b) encompass Plaintiffs' claims. As the Ohio Supreme Court has stated:

It seems reasonably clear that the OTS has established the list in paragraph (b) as a sort of predetermination that state laws of this type are beyond the boundaries of paragraph (c) and, therefore, are not saved from preemption. In other words, the categories of lending activities that are set forth in paragraph (b) are deemed to be outside the permissible regulatory scope of state contract, commercial, real property, tort, and criminal law for purposes of federal lending.

*Pinchot v. Charter One Bank,* 99 Ohio St.3d 390, 394, 792 N.E.2d 1105 (Ohio 2003). The court will analyze each of the subsections of § 560.2(b) that Defendant claims preempt Ohio law regarding post-repossession notice requirements.

#### 1. Loan–Related Fees

Plaintiffs claim that Defendant's Notice improperly stated the amount that Plaintiffs were required to pay in order to redeem the repossessed vehicle because the "Total Amount Due" included the $350.00 for the Total Repossession Charges Assessed instead of only the $25.00 Required Minimum Repossession Payment allowed by O.R.C. § 1317.12(C). (*See* Not. of Intention to Dispose of Motor Vehicle, Pl.'s Ex. C at 3.) Defendant argues that this claim falls under § 560.2(b)(5), which expressly preempts "[l]oan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees."

Plaintiffs argue that their claim does not challenge WFS's *right* to impose fees, but only the *amount* that WFS demanded as a condition of curing the default. However, the court finds this distinction immaterial for the purposes of preemption. The OTS regulation preempts all state laws related to loan-related fees without differentiating between laws governing a financial institution's right to collect fees and laws governing the amount of fee that a financial institution can collect.

Plaintiffs also contend, without explanation, that "[r]epossession costs are not

'loan-related fees' as that term is commonly used." (Pl.'s Opp'n at 14.) However, as repossession is a routine component of the loan process, fees for the cost of repossession are just as common as fees for any other part of the loan process. Courts routinely find various fees expressly preempted under this subsection of HOLA. *See Molosky v. Wash. Mut. Bank,* 07–CV–11247, 2008 WL 183634, 2008 U.S. Dist. LEXIS 3896 (E.D.Mich. Jan. 18, 2008) (payoff fees and recording fees preempted as "loan-related fees"); *Boursiquot v. Citibank F.S.B.,* 323 F.Supp.2d 350 (D.Conn.2004) ("fax/statement" charge for repaying mortgage early preempted); *Haehl v. Wash. Mut. Bank, F.A.,* 277 F.Supp.2d 933 (S.D.Ind.2003) (reconveyance fee preempted as a "loan-related fee"); *Bank of Am. v. City & County of S.F.,* 309 F.3d 551 (9th Cir.2002) (bank's ATM charges to non-depositors preempted); *Lopez,* 105 Cal.App.4th 729, 130 Cal. Rptr.2d 42 (payoff demand fee preempted as a "servicing fee," which fell under "loan-related fees"). Therefore, the court finds that Plaintiffs' claim that Defendant violated state law by listing an improper repossession fee due is expressly preempted by federal law.

### 2. Credit–Related Documents

■ Defendant argues that Plaintiffs' claims also fall under § 560.2(b)(9), which specifically preempts laws related to "disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents...." Although the court was unable to find any case law on point, it is undisputed that Plaintiffs allege that Defendant violated state laws requiring "specific statements, information, or other content" in a post-repossession notice. The court further finds that a post-repossession notice constitutes a "credit-related document" because, as the Defen-

dant points out, the purpose of such a notice is to notify a debtor that his or her credit was revoked and that the collateral with which the debtor secured the credit is being sold, as well as to inform the debtor what he or she needs to pay in order to restore his or her credit. As such, Plaintiffs' various claims alleging that Defendant violated state laws by not including certain information on the post-repossession notice are preempted by § 560.2(b)(9).

Therefore, because the court finds that all of Plaintiffs' claims are expressly preempted by § 560.2(b)(5) and (9), the court need not address Defendant's arguments that the claims are also expressly preempted by § 560.2(b)(7), which preempts laws that regulate "security property," and/or § 560.2(b)(4), which preempts laws that regulate "terms of credit." Furthermore, pursuant to OTS regulations, once a law has been found preempted by section (b), the preemption analysis ends. As such, the court need not address Plaintiffs' arguments that the Ohio laws under which their claims are pled do not affect lending or that these laws fall into the preemption exceptions of section (c). Accordingly, the court hereby grants Defendant's Motion to Dismiss (ECF No. 12).

## IV. MOTION FOR COSTS

Defendant moves, pursuant to Federal Rule of Civil Procedure 41(d), for an award reimbursing it for the costs it incurred while defending this case in state court.

### A. Rule 41(d) Legal Standard

■ Under Rule 41(d):

If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:

(1) may order the plaintiff to pay all or part of the costs of that previous action; and

(2) may stay the proceedings until the plaintiff has complied.

The court has discretion to award costs or stay an action under Rule 41(d). *Rogers v. Wal–Mart Stores, Inc.*, 230 F.3d 868, 874 (6th Cir.2000), *overruled on other grounds* as stated in *Lowe v. Fountain Forestry, Inc.*, No. 3:08–cv–08, 2008 WL 276486, at *2 n. 1, 2008 U.S. Dist. LEXIS 7105, at *6–*7 n. 1 (E.D.Tenn. Jan. 30, 2008). The Sixth Circuit has held that "Rule 41(d) is meant not only to prevent vexatious litigation, but also to prevent forum shopping, 'especially by plaintiffs who have suffered setbacks in one court and dismiss to try their luck somewhere else.'" *Rogers*, 230 F.3d at 874 (quoting *Robinson v. Nelson*, No. 98–10802–MLW, 1999 U.S. Dist. LEXIS 2004, at *5–*6 (D.Mass. Feb.18, 1999)). A defendant need not show bad faith on the part of the plaintiff in order to recover costs. *Rogers*, 230 F.3d at 874 (quotation omitted).

### B.  Plaintiffs' State Court Case

Plaintiffs originally filed this claim in the Cuyahoga County Court of Common Pleas on January 3, 2002. (State Compl., Ex. A, ECF No. 21–2.) For two years, the parties engaged in settlement negotiations, and no formal discovery was conducted. On March 14, 2002, Plaintiffs filed a Motion for Leave to File a First Amended Complaint, which would have added class allegations and the claims that Plaintiffs ultimately filed in federal court. Defendant opposed this Motion on April 15, 2002, arguing that Plaintiffs' proposed Amended Complaint prejudiced it because the proposed Amended Complaint contained almost entirely new and different claims than the original Complaint. The court's docket indicates that Plaintiffs' Motion was denied on August 22, 2003. The parties subsequently requested clarifica-tion on several of the court's orders up to that point. On November 17, 2003, the court reaffirmed its original rulings, thereby upholding the denial of Plaintiffs' Motion for Leave to File a First Amended Complaint.

On March 2, 2004, after WFS indicated that it was no longer interested in pursuing settlement, the court set the discovery deadline for July 2, 2004. On July 6, 2004, WFS moved to either compel Plaintiffs to respond to an outstanding discovery request or to dismiss the case for lack of prosecution. On July 20, 2004, Plaintiffs responded to the Motion to Compel, stating that counsel had been "unable to reach his client to have this discovery answered," but that he would "take the necessary steps to have his client answer all discovery and attend the deposition . . . as soon as possible, and most certainly within 60 days." (Pls.' Resp. Def.'s Mot. Compel and/or Sanctions 3–4, Pls.' Ex. M, ECF No. 21–14.) On November 16, 2004, the court ordered Plaintiffs to respond to WFS's written discovery and to appear for depositions by November 23, 2004, or face dismissal. Plaintiffs did not comply with the discovery and depositions requests. On November 24, 2004, WFS filed a motion to dismiss. On December 2, 2004, Plaintiffs voluntarily moved to dismiss their Complaint.

### C.  Defendant's Requested Reimbursement of Costs

In its Motion, Defendant seeks reimbursement of "over $388.95" in costs. (Def.'s Mot. Costs at 3.) In support of this amount, Defendant submits affidavits from two attorneys at different law firms that represented WFS in the state action. Thomas L. Feher ("Feher"), a partner at Thompson Hine LLP, states that WFS incurred numerous costs, "including $225.35 to make photocopies, which were

necessary for use in the case." (Decl. Feder ¶ 2, ECF No. 13–4.) Mary Kate Sullivan ("Sullivan"), Special Counsel to Severson & Werson, states that WFS incurred numerous costs, "including $163.60 to make photocopies, which were necessary for use in the case." (Decl. Sullivan ¶ 2, ECF No. 13–5.) Consequently, the court finds that Defendant has provided evidence of $388.95 in costs.

### D. Analysis

■ The court finds that the requirements of Rule 41(d) are met here because Plaintiffs voluntarily dismissed their state court case and then refiled it in federal court. While Plaintiffs argue that many of the claims in the current federal case were not present in the state case, Rule 41(d) requires only that the refiled action be "based on or *including the same claim* against the same defendant." Plaintiffs' federal Complaint includes a claim present in their state Complaint because both allege that WFS violated various provisions of O.R.C. § 1309, which covers default, and § 1317, which covers the disposition of collateral. Besides being pled under the same statutes, these federal and state claims are both based on the same facts, namely, the repossession and sale of Plaintiffs' automobile.

Plaintiffs argue that they were forced to refile their case in federal court, as opposed to state court, because their current Complaint was limited to federal jurisdiction by the Class Action Fairness Act, 28 U.S.C. § 1332(d). This argument is not well-taken for several reasons. First, 28 U.S.C. § 1332(d) provides that federal courts have *original* jurisdiction over the type of Complaint filed by Plaintiffs, but nothing in the statute states that federal courts have *exclusive* jurisdiction. Fur-

thermore, the type of court in which Plaintiffs filed the second action is irrelevant; only the fact that they voluntarily dismissed their original action and refiled a similar action is relevant.[5]

Plaintiffs argue that the purpose of Rule 41(d) is not served by awarding costs in the instant case because Defendant caused the federal action to be filed by opposing Plaintiffs' request to amend their state Complaint. The court disagrees. On November 17, 2003, the state court reaffirmed its denial of Plaintiffs' Motion for Leave to File a First Amended Complaint. Consequently, at that time, Plaintiffs were fully aware that they would not be able to pursue the claims in their proposed Amended Complaint in state court. However, for over a year, Plaintiffs did not move to voluntarily dismiss the state case. Instead, Plaintiffs' voluntary dismissal came just eight days after Defendant moved to dismiss the case due to Plaintiffs' failure to comply with the court's Order compelling discovery and depositions. From this timeline of events, the court finds that Plaintiffs' decision to voluntarily dismiss the state action was a tactical decision to avoid a likely involuntary dismissal. Plaintiffs then filed a federal action that included some of the same claims as the state action, all based on the same facts. This is exactly the type of action that Rule 41(d) seeks to curb. Therefore, pursuant to the court's discretion under Rule 41(d), the court hereby grants costs in the amount of $388.95 to Defendant.

### V. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 12) is granted and Defendant's Motion for Costs

5. The court notes, as an aside, that Ohio Rule of Civil Procedure 41(d) contains a provision identical to its federal counterpart. Consequently, had Plaintiffs refiled their case in state court, it would not have precluded Defendant from moving for reimbursement of costs of the original action.

(ECF No. 13) is granted in the amount of $388.95.

IT IS SO ORDERED.