Jose AGUAYO, Aguayo,

v.

U.S. BANK, U.S. Bank.

Case No. 08–CV–2139 W(LSP).

United States District Court,
S.D. California.

Sept. 24, 2009.

Michael E. Lindsey, Law Offices of Michael E. Lindsey, San Diego, CA, Andrew

J. Ogilvie, Carol McLean Brewer, Kemnitzer Anderson Barron Ogilvie & Brewer LLP, San Francisco, CA, for Aguayo.

James R. McGuire, Morrison and Foerster, San Francisco, CA, Sylvia Rivera, Morrison and Foerster, Los Angeles, CA, for U.S. Bank.

## ORDER GRANTING U.S. BANK'S MOTION TO DISMISS

THOMAS J. WHELAN, District Judge.

Pending before the Court is Defendant U.S. Bank's motion to dismiss and motion to strike. Along with the motions, U.S. Bank has also filed a request for judicial notice. Plaintiff Jose Aguayo opposes the motion to dismiss and strike.

The Court decides the matter on the papers submitted and without oral argument. *See* S.D. Cal. Civ. R. 7.1(d.1). Because the documents attached to the request for judicial notice are not subject to reasonable dispute, the Court **GRANTS** the request for judicial notice (Doc. No. 17). And for the following reasons, the Court **GRANTS** the motion to dismiss (Doc. No. 15) and **DENIES** the motion to strike (Doc. No. 16) as moot.

## I. BACKGROUND

The relevant facts for the pending motion are as follows.

Defendant U.S. Bank is a national banking association organized under the National Bank Act, 12 U.S.C. §§ 21 *et seq.* (*Def.'s RJN* [Doc. No. 17], Ex. A at 32, Ex. B at 36.) U.S. Bank has branch offices in 26 states, with its main office in Ohio. (*Id.,* Ex. B at 36.)

On or about August 10, 2003, Plaintiff Jose Aguayo purchased a Ford Expedition for personal use from a dealership in California. (*Compl.* [Doc. No. 1, Ex. A], ¶ 6.[1])

Aguayo signed a Retail Installment Sale Contract (RIC), which shortly thereafter was assigned to U.S. Bank. (*Id.*) When Aguayo later defaulted on the loan, U.S. Bank repossessed the vehicle. (*Id.,* ¶ 7.)

After repossessing the vehicle, on August 14, 2007, U.S. Bank sent Aguayo a Notice of Our Plan to Sell Property. (*See Coss Decl.,* Ex. A.) The Notice advised Aguayo that the vehicle had been repossessed and would be sold after September 3, 2007. (*Id.,* Ex. A at 2.) Additionally, the Notice stated that if the vehicle was sold for less than the amount Aguayo owed, "you will still owe us the difference." (*Id.*) U.S. Bank subsequently sold the vehicle and sought to recover the deficiency balance against Aguayo. (*Compl.,* ¶¶ 9, 10.)

On August 1, 2008, Aguayo filed this proposed class-action lawsuit against U.S. Bank in the San Diego Superior Court. Aguayo alleges that U.S. Bank violated California Civil Code §§ 2981 *et seq.* (the Rees–Levering Automobile Sales Finance Act) by failing to satisfy the Act's post-repossession notice requirements. Aguayo is pursuing this claim under California's Unfair Competition Law, Business & Professions Code §§ 17200 *et seq.* (*Compl.,* ¶¶ 8, 11; *Pl's Opp.* at 19–20.)

On November 19, 2008, U.S. Bank removed the case to this Court based on the Class Action Fairness Act. U.S. Bank now seeks to dismiss this lawsuit based on federal preemption.

## II. APPLICABLE STANDARD

The Court must dismiss a cause of action that fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *North Star Int'l v. Arizona Corp.*

---

**1.** The Complaint alleges that Aguayo purchased the vehicle on October 8, 2008. However, the Retail Installment Sale Contract establishes that the sale occurred on August 10, 2003. (*See Coss Decl.* [Doc. No. 12], Ex. B at 5)

*Comm'n*, 720 F.2d 578, 581 (9th Cir.1983). All material allegations in the complaint, "even if doubtful in fact," are assumed to be true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929(2007). The court must assume the truth of all factual allegations and must "construe them in the light most favorable to [the non-moving party]." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir.2002); *Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.3d 1575, 1580 (9th Cir.1996).

As the Supreme Court explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citations omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.1984).

■ Generally, the court may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990). However, the court may consider any documents specifically identified in the complaint whose authenticity is not questioned by the parties. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n. 1 (9th Cir.1995). The court may also consider material properly subject to judicial notice without converting the motion into a motion for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir.1994) (*citing Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279,

1282 (9th Cir.1986), *abrogated on other grounds by Astoria Federal Savings and Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991)).

### III. DISCUSSION

U.S. Bank moves to dismiss Aguayo's claim on grounds of federal preemption. U.S. Bank contends that, as a national bank, federal law preempts state laws that interfere with its authorized activities. U.S. Bank argues that the Rees–Levering Act is preempted because its post-repossession notice requirements interfere impermissibly with national banks' authorized lending powers. And, because Aguayo's cause of action under California's Unfair Competition Law is derivative of the alleged Rees–Levering violation, the entire claim must be dismissed.

Aguayo counters that the Rees–Levering Act neither conflicts nor interferes with U.S. Bank's authorized federal lending powers, and additionally that U.S. Bank's status as an assignee of the RIC preserves the requirements of Rees–Levering as they applied when Aguayo entered into the contract. Aguayo argues that by purchasing the RIC from the dealer, U.S. Bank is a voluntary assignee to the contract, subject to the same rights and limitations as the assignor. According to Aguayo, U.S. Bank's motion to dismiss must fail because contractual obligations are not preempted.

In analyzing U.S. Bank's motion to dismiss, the Court answers two questions. First, is the Rees–Levering Act preempted by federal law? And second, does U.S. Bank's status as an assignee of the RIC change the Court's preemption analysis?

### A. The Rees–Levering Act is Expressly Preempted by Federal Regulation.

■ Federal preemption may be established in three ways: (1) express pre-

emption; (2) field preemption; and (3) conflict preemption. *Bank of America v. City and County of San Francisco*, 309 F.3d 551, 558 (9th Cir.2002). The dispositive issue in any question of federal preemption is congressional intent. *Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987). "Did Congress, in enacting the Federal Statute, intend to exercise its constitutionally delegated authority to set aside the laws of the State? If so, the Supremacy Clause requires courts to follow federal, not state, law." *Barnett Bank v. Nelson*, 517 U.S. 25, 30, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996).

▇▇▇ The supremacy question is generally met with a presumption against preemption. However, this presumption is not implicated when the area of law analyzed is subject to significant federal presence. *United States v. Locke*, 529 U.S. 89, 108, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000). National banking is an example. "Congress has legislated the field of banking from the days of *M'Culloch v. Maryland* [17 U.S. 316, 4 Wheat. 316, 4 L.Ed. 579 (1819)] [citation], creating an extensive federal statutory and regulatory scheme." *Bank of America*, 309 F.3d at 558. Thus, there is no presumption against preemption when analyzing state regulation of the banking industry. *Id.* at 559 ("[B]ecause there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable.").

Congress enacted the National Bank Act (NBA) in 1864. *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 10, 127 S.Ct. 1559, 167 L.Ed.2d 389 (2007). Through the NBA, Congress granted national banks broad authority to exercise "all such incidental powers as necessary to carry on the business of banking." 12 U.S.C. § 24 (Seventh). These powers include "discounting and negotiating promissory notes" and "loaning money on personal security." *Id.*

▇▇▇ Congress further assigned supervision of national banks and implementation of the NBA to the Office of the Comptroller of Currency (OCC). *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995). The OCC is authorized to issue rules and regulations as necessary to preserve the purpose and sound operation of the national banking system. *See* 12 U.S.C. § 93a; 69 Fed. Reg. 1904, 1907 (January 13, 2004). This authority includes interpretation of state law preemption under the NBA. *Rose v. Chase Manhattan Bank USA*, 396 F.Supp.2d 1116, 1122 (C.D.Cal.2005) (citing 12 U.S.C. § 43). OCC regulations carry the same weight as federal statutes when considering questions of state law preemption. *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985).

In January 2004, the OCC issued 12 C.F.R. § 7.4008 to clarify the applicability of state law to national banks' non-real estate lending activities. 69 Fed. Reg. at 1905. The regulation begins by reiterating the national banks' grant of federal power to "make, sell, purchase, participate in, or otherwise deal in loans and interests in loans." 12 C.F.R. § 7.4008(a). The regulation then sets forth a general preemption test and specific types of state laws preempted by the NBA. The regulation provides, in pertinent part:

(1) Except where made applicable by Federal law, state laws that *obstruct, impair, or condition* a national bank's ability to fully exercise its Federally authorized non-real estate lending powers are not applicable to national banks.

(2) A national bank may make non-real estate loans without regard to state law limitations concerning:

. . .

(iv) The terms of credit, including the schedule for repayment of principle and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon a passage of time or a specified event external to the loan;

. . .

(vi) Security property, including leaseholds;

. . .

(viii) *Disclosure* and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or *other credit-related documents* [.]

12 C.F.R. § 7.4008(d) (emphasis added).

Additionally, the regulation provides a "savings clause"—a list of state laws not generally preempted. Excluded from preemption are several common law subjects such as contracts, torts, and rights to collect debt, but only to the extent that they "incidentally affect the exercise of national bank powers." 12 C.F.R. § 7.4008(e). As described by the OCC, "these types of laws typically do not regulate the manner or content of the business of banking authorized for national banks, but rather establish the legal infrastructure that makes practicable the conduct of that business." 69 Fed. Reg. at 1913; *see also In re Ocwen Loan Servicing*, 491 F.3d 638, 643 (7th Cir.2007) (Posner, J.) (describing the similar list in 12 C.F.R. § 560.2 as "basic state laws that undergird commercial transactions").

Here, U.S. Bank argues that the Rees–Levering Act is expressly preempted under section 7.4008(d)(2)(viii).[2] Specifically, U.S. Bank contends that by enforcing additional post-repossession notice requirements on national banks, and voiding deficiency judgment for failure to abide by its notice requirements, the Rees–Levering Act directly regulates the disclosure practices of national banks. *See* Cal. Civ.Code § 2983.2. The Court agrees.

■ Section 7.4008(d)(2)(viii) expressly preempts any state law regulating "[d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents." The Rees–Levering post-repossession notice standards are undoubtedly disclosure requirements. The Act specifically directs banks to include certain information in their notices, and predicates the validity of subsequent deficiency judgments on disclosure of that information. Cal. Civ.Code § 2983.2(a). However, the real question is whether the post-repossession notice qualifies as an "other credit-related document" under section 7.4008(d)(2)(viii).

■ The court in *Crespo v. WFS Fin. Inc.*, 580 F.Supp.2d 614 (N.D.Ohio 2008), considered a closely-related claim under Ohio's Retail Installment Sales Act ("RISA"). After defaulting on their installment automobile loans, plaintiffs claimed WFS, a national thrift, failed to provide all information required by the RISA in its post-repossession notice. *Id.* at 616. The court held the RISA expressly preempted under 12 C.F.R.

**2.** The Court notes that U.S. Bank also attacked Rees–Levering as regulation of "terms of credit" and "security property" under sections 7.4008(d)(2)(iv) and (vi). (*Motion to Dismiss* [Doc. No. 15], at 8–10.) The Court, however, finds "disclosures" to be sufficient for a showing of preemption, and sees no need to consider the merits of U.S. Bank's alternative grounds.

§ 560.2(b)(9)—the Office of Thrift Supervision (OTS) equivalent to section 7.4008. *Id.* at 623. The court's analysis reinforced the fact that the defendant supplied the post-repossession notice during the continuing credit relationship between the debtor and the bank. According to the court, "the purpose of such notice is to notify a debtor that his or her *credit* was revoked and that the collateral with which the debtor secured the *credit* is being sold, as well as to inform the debtor what he or she needs to pay in order to restore his or her *credit.*" *Id.* (emphasis added).[3] This Court concurs with the analysis in *Crespo.* U.S. Bank issued the present notice during its continuing credit relationship with Aguayo. Therefore, the notice is a "credit-related document" under section 7.4008(d)(2)(viii).

■■■ Aguayo contends that the Rees–Levering notice requirements do not interfere with U.S. Bank's disclosure requirements, because there are no federal disclosure requirements to conflict with. (*Pl's Opp.* at 11.) This argument has no merit. First, as U.S. Bank points out, national banks are subject to the notice requirements of the Uniform Commercial Code. (*Def's Reply* [Doc. 25], at 8–9.) *See* OCC Interpr. Letter 1005 (June 10, 2004). Second, Aguayo's argument ignores the explicit language of section 7.4008(d)(2). Aguayo appears to argue that without conflict preemption, there is no preemption at all. Yet, conflict preemption is only one type of preemption. *See Bank of America,* 309 F.3d at 558. The state laws discussed in section 7.4008(d)(2) are expressly preempted. The language of the section is clear: "A national bank may make non-real estate loans *without regard to state law limitations* [listed]." 12 C.F.R. § 7.4008(d)(2) (emphasis added).

Furthermore, the examples of (d)(2) are expressly included because the OCC found significant conflict with the federal lending powers. *Rose,* 396 F.Supp.2d at 1121 ("[T]he OCC can determine which types of state laws 'obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized non-real estate lending powers,' and it did just that when it enacted subsection (d)(2)."). As the OCC noted, "the variety of state and local laws that have been enacted in recent years— including laws regulating ... disclosures ... have created higher costs and increased operational challenges.... As a result, national banks must either absorb the costs, pass the costs on to consumers, or eliminate various products from jurisdictions where the costs are prohibitive." 69 Fed. Reg. at 1908. This result is clearly contrary to the basic principle of national banks, which is "to operate under uniform standards of operation and supervision." *Id.* Thus, even if express preemption was unavailable in the present circumstances, the Court finds sufficient evidence in the OCC's statements to show conflict preemption as well.

Aguayo also points to *Alkan v. Citimortgage, Inc.,* 336 F.Supp.2d 1061 (N.D.Cal. 2004), to support the proposition that U.S. Bank's debt collection practices do not implicate the preemption provisions of section 7.4008(d)(2), because debt collection is not part of the "lending" process. (*Pl's Opp.* at 12.) In *Alkan,* the court held California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ.Code §§ 1788 *et seq.,* free from preemption under the

---

**3.** In his footnote addressing *Crespo,* Aguayo noted that the regulation enforced was the more "stringent" Home Owners Loan Act. (*Pl's Opp.* [Doc. 23], at 10 n. 11.) While the Court acknowledges that the OTS regulation expressly preempts the field of federal thrifts, whereas OCC regulations do not, that fact is irrelevant to classification of post-repossession notice as a "credit related document."

federal Home Owner's Loan Act (HOLA). 226 F.Supp.2d at 1064. The court reviewed the examples of preempted state laws under the equivalent preemption statute, 12 C.F.R. § 560.2, and found that the laws discussed only affected the creation of the loan, and therefore not debt collection. *Id.* Since debt collection was not part of the express preemption examples, the court denied preemption. *Id.* This Court respectfully disagrees with that analysis.

■ The NBA clearly contemplates broad participation by the national banks in lending activities. The federal banking powers extend to not only creating loans, but also purchasing, participating in, and dealing loans. 12 C.F.R. § 7.4008(a). The power to collect debts and repossess collateral property under default is inseparable from the power to make or purchase loans, and is arguably an element of participation and dealing in loans. Furthermore, one of the fundamental purposes of the NBA is to provide uniformity of regulation to the national banking system. *See* 69 Fed.Reg. at 1908. There is no reason to believe that Congress intended this uniformity to apply only to the first-step of the lending process. Therefore, this Court construes the preemption test of section 7.4008(d) to apply to all activities undertaken under national lending powers.

■ Aguayo's final argument is that the Rees–Levering Act is exempt from federal preemption under the section 7.4008(e) savings clause. Specifically, Aguayo argues, the Rees–Levering Act is saved by the "contracts" and "rights to collect debts" exceptions. 12 C.F.R. §§ 7.4008(e)(1) and (4). The savings clause, however, does not apply to the present analysis, and is thus unavailing.

■ In evaluating this issue, the Court finds guidance from the comparable regulation for federal thrifts. When applying its own preemption analysis under HOLA, 12 C.F.R. § 560.2, the OTS first considers

whether the state law is covered by the list of expressly preempted areas. 61 Fed. Reg. 50951, 50966 (Sept. 30, 1996). If the state law fits in the list of laws preempted, then the analysis is over. *Id.* Courts need not consider whether the state law also fits under the areas listed in the savings clause.

For several reasons, this Court follows the same procedure for the OCC regulation. First, the two regulations are strikingly similar. In addition to having the same general format, the list of state laws expressly preempted in section 560.2(b) are nearly identical those in section 7.4008(d). The same is true with state laws not preempted. Both savings clauses represent common law subjects that are fundamental to commercial transactions. Second, the regulations apply to similar federal powers—the lending activities of federal monetary institutions. *See* 12 C.F.R. § 560.2(a); 12 C.F.R. § 7.4008(a). Third, the fact that the preempted laws are listed in subsection (d)(2) means that the OCC determined them to "obstruct, impair, or condition" federal lending powers. *Rose,* 396 F.Supp.2d at 1121. By doing so, they clearly affect the banks' ability to engage in lending activities more than "incidentally," and are thus inapplicable to the savings clause. 12 C.F.R. § 7.4008(e).

Finally, and most importantly, the OCC interprets the preemptive scopes of the NBA and HOLA to be the same: "The extent of Federal regulation and supervision of Federal savings associations under the Home Owners' Loan Act is substantially the same as for national banks under the national banking laws, *a fact that warrants similar conclusions about the applicability of state laws* to the conduct of the Federally authorized activities of both types of entities." 69 Fed. Reg. at 1912 n. 62 (emphasis added). If preemption is to

be construed in the same way under the NBA as the HOLA, then the test for preemption should also be the same.

For these reasons, the Court finds that the Rees–Levering Act is preempted by regulation, and the savings clause provides no sanctuary for laws already preempted by the express language of the OCC.

## B. *The Assignment does not Affect the Court's Preemption Analysis.*

Aguayo argues that because the RIC was assigned to U.S. Bank, the terms of Rees–Levering remain in the original contract. According to Aguayo, by purchasing the RIC from the dealer, U.S. Bank is a voluntary assignee to the contract, subject to the same rights and limitations as the assignor. To support his argument, Aguayo cites several cases, including the Supreme Court's opinion in *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). According to Aguayo, "[c]ontractual obligations voluntarily assumed are not preempted." (*Pl's Opp.* at 1.)

In *Wolens*, the Supreme Court held that the Airline Deregulation Act of 1978 preempted the Illinois Consumer Fraud Act. 513 U.S. at 228, 115 S.Ct. 817. The Court did not, however, read the Act to "shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Id.* Thus, the Supreme Court held that, while claims under the Consumer Fraud Act were preempted, separate claims for breach of contract were not. *Id.* at 228–29, 115 S.Ct. 817.

*Wolens* does not assist Aguayo, because the present complaint alleges no breach of contract. Rather, the Unfair Competition claim is based solely on U.S. Bank's violation of the Rees–Levering Act. (*Compl.* ¶¶ 11, 18, 27.) While, Aguayo's opposition to U.S. Bank's motion to dismiss frames the issue in terms of contract, the claim as pled is absent of any such reference. As such, the only direction *Wolens* provides this Court is to evaluate the Rees–Levering Act directly for preemption.

Nor does contract assignment save Aguayo's claims from preemption. The lending powers granted by the NBA include RIC's assigned to national banks by local vendors. In fact, Section 7.4008(a) expressly authorizes national banks to "make" and "purchase" non-real estate loans in the course of its regular business. 12 C.F.R. § 7.4008(a). Thus, in addition to originating the loan itself, U.S. Bank is permitted under the NBA to purchase loans from other sources.

Furthermore, the OCC considers assigned RIC's indistinguishable from national bank loans for purposes of regulation. "[A] national bank-owned RIC is the equivalent of a national bank loan. Once purchased, a RIC is treated for regulatory and reporting purposes the same as a loan originated by the bank." OCC Interpr. Letter 1095, March 2008, at 3 (citations omitted). Because the OCC considers loans made and purchased by national banks to be subject to the same regulation, it follows that assigned RIC's are subject to the same preemption test as direct loans. *See id.* Thus, the same rules of state law preemption apply to all national bank loan assets, original or assigned. Assignment of RICs is therefore inferior to the supremacy of federal regulation in this case. The Court's holding of preemption overrides the considerations of assignment.

This result is supported by the opinion of the California Court of Appeal. In *WFS Financial, Inc. v. Superior Court*, 44 Cal.Rptr.3d 561,[4] the Court of Appeal

---

4. As the court in *Crespo* noted, this case was depublished upon grant of review by the California Supreme Court, and later vacated be-

considered whether the bank's purchase of an automobile loan avoided HOLA preemption of the Rees–Levering Act. The defaulting party argued that preemption was inappropriate, because it would "magically strip[ ]" the original contract of its Rees–Levering terms. *Id.* at 570. The court rejected the argument and held the broad scope of preemption applied regardless of the type or form of loan. *Id.* As the court noted, even indirect loaning "brings the full force of OTS's lending regulation on preemption into play." *Id.* Considering the OCC's intent to apply federal preemption to the national banks to the same extent as the OTS, it is clear that the NBA also preempts state laws affecting indirect loaning, regardless of contract assignment. *See* 69 Fed.Reg. at 1912 n. 62.

Aguayo's assignment arguments fail to prevent preemption. The OCC's regulatory scheme is designed to treat direct and assigned loans the same way. Thus, the Court's preemption analysis is unaffected by the fact that the RIC was assigned to the national bank.

Because the Rees–Levering Act is preempted by 12 C.F.R. § 7.4008(d), Aguayo's cause of action under California's Unfair Competition Law lacks a "cognizable legal theory," and is therefore dismissed as a matter of law. *Robertson,* 749 F.2d at 534.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** U.S. Bank's request for judicial notice (Doc. No. 17) and motion to dismiss (Doc. No. 15).[5] Because Aguayo's com-

cause the parties settled. 580 F.Supp.2d at 619; *see* 53 Cal.Rptr.3d 801, 150 P.3d 692. Nevertheless, the Court finds the reasoning particularly relevant to the facts at hand, if not binding authority.

plaint is dismissed, U.S. Bank's motion to strike (Doc. No. 16) is **DENIED** as moot.

**IT IS SO ORDERED.**

5. Because Aguayo's claim is dismissed on grounds of preemption, the Court need not consider the merits of U.S. Bank's standing arguments.