**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE AGUAYO, an individual,
*Plaintiff-Appellant,*

v.

U.S. BANK, a business entity form
unknown; DOES 1-30, inclusive,
*Defendants-Appellees.*

No. 09-56679

D.C. No.
3:08-cv-02139-
W-BLM

OPINION

Appeal from the United States District Court
for the Southern District of California
Thomas J. Whelan, Senior District Judge, Presiding

Argued and Submitted
February 9, 2011—Pasadena, California

Filed August 1, 2011

Before: Harry Pregerson and Kim McLane Wardlaw,
Circuit Judges, and Jack Zouhary, District Judge.*

Opinion by Judge Zouhary

---

*The Honorable Jack Zouhary, United States District Judge for the
Northern District of Ohio, sitting by designation.

---

## COUNSEL

F. Paul Bland (argued), Claire Prestel, Melanie Hirsch; Public Justice P.C., Washington. D.C., Leslie A. Brueckner, Public Justice P.C., Oakland, California, Andrew J. Ogilvie, Carol M. Brewer, Anderson, Ogilvie & Brewer LLP, San Francisco, California, Michael E. Lindsey, San Diego, California, for plaintiff-appellant Jose Aguayo.

James R. McGuire (argued), Rita F. Lin, Morrison & Foerster LLP, San Francisco, California, Sylvia Rivera, Morrison & Foerster LLP, Los Angeles, California, for defendant-appellee U.S. Bank.

## OPINION

ZOUHARY, District Judge:

### INTRODUCTION

Jose Aguayo ("Aguayo") appeals the district court's grant of Defendant U.S. Bank N.A.'s ("U.S. Bank") motion to dismiss. Aguayo claims U.S. Bank violated a section of California's Rees-Levering Act that requires a car loan lender to provide certain post-repossession notices to a defaulting borrower prior to selling the repossessed car. If the lender fails to provide the required notices, the lender is barred from collecting any remaining deficiency after the car is sold. Aguayo argues that because the notices he received from U.S. Bank did not contain all the information required under the relevant section of the Rees-Levering Act, U.S. Bank is barred from collecting any deficiency. U.S. Bank argues the Rees-Levering post-repossession notice requirements are preempted by the National Bank Act ("NBA") and its regulations. Because the Rees-Levering Act sections at issue are directed toward debt collection and are therefore not preempted by the NBA, we reverse.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

#### A.  Factual Background

In August 2003, Aguayo purchased a Ford Expedition from the Star Ford dealership in Glendale, California. Like many car buyers, Aguayo financed the purchase of the Expedition through the dealership. Aguayo signed a standard Retail Installment Sale Contract ("RIC") that detailed the financing terms of his purchase. Shortly after the purchase, and unbeknownst to Aguayo, Star Ford assigned the RIC to U.S. Bank.

A few years later, Aguayo fell behind on his car payments, defaulted on the loan, and U.S. Bank repossessed the Expedi-

tion. Aguayo does not dispute U.S. Bank's right to purchase the RIC from Star Ford and assume the contract terms as an assignee, nor does Aguayo challenge U.S. Bank's repossession of the car.

After the Expedition was repossessed in August 2007, U.S. Bank sent Aguayo a "Notice of Our Plan to Sell Property" which stated the car would be sold sometime after September 3, 2007. Enclosed with the Notice were two other documents. The first was a "Request for Extension" by which Aguayo could request a ten-day extension of the deadline to redeem the car. The second document was a "California Redemption Letter with an Extension Agreement Accompanied." The Letter provided details about the amount of Aguayo's overdue payments and the total amounts due for Aguayo to either redeem the car or reinstate the contract. The Letter also contained a conspicuous notice, located at the bottom of the page and written in bold, all capital letters, that stated Aguayo may be subject to suit and liability for any deficiencies if U.S. Bank's sale of the car was not sufficient to satisfy the balance of the contract. The Letter, while closely tracking, did not contain all the information required under the Rees-Levering Act.

After sending the August 2007 Notice, U.S. Bank eventually sold the Expedition when Aguayo did not redeem the car. Because the sale proceeds were not sufficient to satisfy the contract, U.S. Bank sought to recover the deficiency from Aguayo. In response, Aguayo filed the lawsuit that forms the basis for this appeal.

## B.   Procedural Background

Aguayo filed his original action in California state court on behalf of himself and a proposed class of other similarly situated California consumers. Using the California Unfair Competition Law ("UCL") as a procedural vehicle, Aguayo alleges U.S. Bank's failure to provide post-repossession

notices in accordance with certain sections of the Rees-Levering Act constituted unlawful, unfair, and fraudulent practices under the three prongs of the UCL. Aguayo further argues that U.S. Bank forfeited its right to collect any deficiency debt under California law by failing to comply with the Rees-Levering Act's post-repossession notice requirements. Accordingly, Aguayo claims U.S. Bank's demands for deficiency payments were improper and requests monetary relief for himself and similar deficiency claims paid by the proposed class in the last four years. Aguayo also seeks injunctive relief to prevent U.S. Bank from making improper deficiency claims in the future.

U.S. Bank timely removed the action, asserting that the requested relief for the proposed class would satisfy the removal requirements under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A). U.S. Bank then moved to dismiss the case, arguing the NBA and regulations promulgated by the Office of the Comptroller of the Currency ("OCC") preempt the California Rees-Levering Act notice provisions. U.S. Bank claims the requirements interfere with its federal authority to carry on the business of banking free from state-law restrictions. Furthermore, because Aguayo's cause of action under the UCL was predicated on the alleged Rees-Levering Act violation, U.S. Bank argues Aguayo's entire claim should be dismissed.

The district court dismissed the case, finding the Rees-Levering Act repossession notice requirements were expressly preempted by the NBA and OCC regulations. *Aguayo v. U.S. Bank*, 658 F. Supp. 2d 1226, 1235 (S.D. Cal. 2009).

## II. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction under 28 U.S.C. §§ 1332(d)(2) and 1441(a). We have jurisdiction pursuant to 28 U.S.C. § 1291. We review *de novo* a district court's dismissal for failure to state a claim under Federal Civil Rule

12(b)(6). *Nw. Envtl. Def. Ctr. v. Brown*, 640 F.3d 1063, 1069 (9th Cir. 2011). "Questions of statutory interpretation are reviewed *de novo*, as are questions of preemption." *Lopez v. Wash. Mut. Bank*, 302 F.3d 900, 903 (9th Cir. 2002) (citations omitted); *see also Toumajian v. Frailey*, 135 F.3d 648, 652 (9th Cir. 1998) ("[P]reemption is also a question of law reviewed *de novo*."). A complaint must not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1138 (9th Cir. 2003). All allegations of material fact in Aguayo's Complaint are taken as true and construed in the light most favorable to Aguayo as the non-moving party. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

## III. DISCUSSION

There are "two cornerstones" of preemption jurisprudence. *Wyeth v. Levine*, 555 U.S. 555, 129 S. Ct. 1187, 1194 (2009). "First, 'the purpose of Congress is the ultimate touchstone in every pre-emption case.' " *Id.* (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). Second, "[i]n all pre-emption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,' . . . we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' " *Id.* at 1194-95 (quoting *Lohr*, 518 U.S. at 485).

Aguayo's claims, rooted in California's consumer-protection laws, fall in an area that is traditionally within the state's police powers to protect its own citizens. "Because consumer protection law is a field traditionally regulated by the states, compelling evidence of an intention to preempt is

required in this area." *Gen. Motors Corp. v. Abrams*, 897 F.2d 34, 41-42 (2d Cir. 1990).[1]

This Court has previously expressed three ways a federal law may preempt state law:

> First, Congress may preempt state law by so stating in express terms. Second, preemption may be inferred when federal regulation in a particular field is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. In such cases of field preemption, the mere volume and complexity of federal regulations demonstrate an implicit congressional intent to displace all state law. Third, preemption may be implied when state law actually conflicts with federal law. Such a conflict arises when compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Bank of Am.*, 309 F.3d at 558 (internal quotation marks and citations omitted). These three forms of preemption are commonly referred to as express, field, and conflict preemption, respectively. Regardless of the name attached to the type of preemption, the dispositive issue in any federal preemption

---

[1]National bank association entities, such as U.S. Bank, have often been given the benefit of the doubt in preemption questions. Generally, the presumption against preemption is not applicable in the realm of national bank regulation. "[T]he presumption [against preemption] is 'not triggered when the State regulates in an area where there has been a history of significant federal presence.' . . . [B]ecause there has been a 'history of significant federal presence' in national banking, the presumption against preemption of state law is inapplicable." *Bank of Am. v. City & Cnty. of San Francisco*, 309 F.3d 551, 558-59 (9th Cir. 2002) (quoting *United States v. Locke*, 529 U.S. 89, 108 (2000)). The presumption is not material to our decision in this case.

question remains congressional intent. *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 30 (1996). "Did Congress, in enacting the Federal Statute, intend to exercise its constitutionally delegated authority to set aside the laws of a State? If so, the Supremacy Clause requires courts to follow federal, not state, law." *Id.*

The district court relied on express preemption, holding that the post-repossession notices required under the Rees-Levering Act are preempted by regulations promulgated under the NBA by which national banks are exempt from state laws concerning "[d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents[.]" *Aguayo*, 658 F. Supp. 2d at 1232-33 (quoting 12 C.F.R. § 7.4008(d)(2)(viii)). Specifically, the district court held the Rees-Levering notice requirements are "disclosures" under the terms of the regulation. *Aguayo*, 658 F. Supp. 2d at 1232 ("The Rees-Levering post-repossession notice standards are undoubtedly disclosure requirements."). The district court then analyzed whether the Rees-Levering notices were "credit-related documents" under the regulation. *Id.* ("[T]he real question is whether the post-repossession notice qualifies as an 'other credit-related document' under section 7.4008(d)(2)(viii)."). Finding that U.S. Bank's post-repossession notice was "issued . . . during its continuing credit relationship with Aguayo . . . [and is thus] a 'credit-related document' under section 7.4008(d)(2)(viii)[,]" the district court held the provisions of the Rees-Levering Act requiring specific post-repossession notices are preempted. *Id.* at 1233.

The district court also acknowledged, but refused to apply, the savings clause found in Subsection (e) of the same regulation. *Id.* at 1234. The savings clause explicitly lists state laws that are not preempted, including state laws pertaining to "contracts" and "rights to collect debts." 12 C.F.R.

§ 7.4008(e)(1), (4). Because the district court erred in refusing to apply the regulation's savings clause, and because the Rees-Levering post-repossession notices are "disclosures" that would not be considered "credit-related documents," we reverse.

## A. California's Rees-Levering Act

California's Rees-Levering Act is a broad statute enacted to protect California motor vehicle purchasers. Comment, *Recent Legislation: The Rees-Levering Motor Vehicle Sales and Finance Act*, 10 UCLA L. Rev. 125, 127 (1962) ("The [Rees-Levering Act] is designed to provide more comprehensive protection for the unsophisticated motor vehicle consumer . . . ."). The Act contains requirements that are designed to protect a car buyer from excessive charges and requires full disclosure of all items of cost at all points in the life of a vehicle purchase transaction. The Act provides: (1) required disclosure in the conditional sale contract of cash price, fees, taxes, maximum amount of finance charges, and other dealer-added charges (Cal. Civ. Code § 2982(a)); (2) limitations on security interests that may be created by conditional sale contracts (*id.* § 2984.2); (3) required disclosure of a buyer's right to prepay a vehicle purchase contract without penalty (*id.* § 2982(l)); (4) requirements governing the repossession and resale of vehicles by the seller or contract holder (*id.* §§ 2983.2, 2983.3); and (5) a buyer's remedies when a seller violates the Act (*id.* §§ 2982.7, 2983.1, 2983.8(b)).

The two provisions of the Rees-Levering Act at issue in this appeal are Section 2983.2(a), which lists the detailed information the holder of a purchase contract (the "lender") must provide to the person liable on the purchase contract (the "buyer") *after* the lender has repossessed the motor vehicle, and Section 2983.8(b), which states the lender may not collect a deficiency judgment from the buyer if the disposition of the repossessed motor vehicle did not conform with the provisions of Section 2983. *Id.* §§ 2983.2(a), 2983.8(b). U.S. Bank

does not dispute that the notices sent to Aguayo did not fully comply with Section 2983.2.

## B. The NBA and the OCC

The NBA, as the ultimate statutory authority for national banks, was originally enacted in 1864 to give banks broad authority to exercise "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24 (Seventh). Congress subsequently delegated the supervision of national banks and the implementation of the NBA to the OCC. 12 U.S.C. § 93a. The OCC's authority includes "prescrib[ing] rules and regulations to carry out the responsibilities of the office." *Id.* This regulatory authority, which carries the same weight as federal statutes, includes interpretation of state law preemption under the NBA. *See Rose v. Chase Manhattan Bank USA*, 396 F. Supp. 2d 1116, 1122 (C.D. Cal. 2005) (citing *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 369 (1986)).

Under its delegated powers, the OCC has promulgated regulations specifically directed toward identifying which state laws affecting national banks are preempted. *See* OCC, Preemption Final Rule, 69 Fed. Reg. 1916 (2004); 23 OCC Q.J. 28 (Mar. 2004), 2004 WL 2360325. The regulation relevant here is the OCC's determination outlining which state laws affecting non-real estate lending are preempted in favor of federal law and OCC regulations. 12 C.F.R. § 7.4008.

The portions of Section 7.4008 at issue are as follows:

(d) Applicability of state law.

(1) Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized non-real estate lending powers are not applicable to national banks.

(2) A national bank may make non-real estate loans without regard to state law limitations concerning:

. . .

(viii) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents;

. . . .

(e) State laws that are not preempted. State laws on the following subjects are not inconsistent with the non-real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' non-real estate lending powers:

(1) Contracts;

. . .

(4) Rights to collect debts[.]

12 C.F.R. § 7.4008(d), (e).

## C. Regulatory Interpretation

We review questions of statutory interpretation and preemption *de novo*, *Lopez*, 302 F.3d at 903. We begin our review by looking at the district court's decision not to apply the savings clause in Section 7.4008, followed by a review of the express preemption clause that was the basis for the district court's decision.

### 1. *Canons of Construction*

A general canon of statutory construction requires the court to review the entirety of the statute. When interpreting a statute, "we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51 (1987) (quotations and citations omitted); *see also Boise Cascade Corp. v. U.S. E.P.A.*, 942 F.2d 1427, 1432 (9th Cir. 1991) ("Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word . . ."). This is particularly true when interpreting a statute that includes a savings clause. *Pilot Life Ins. Co.*, 481 U.S. at 47-51; *see also Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739-40 (1985) ("The two pre-emption sections, while clear enough on their faces, perhaps are not a model of legislative drafting, for while the general pre-emption clause broadly pre-empts state law, the saving clause appears broadly to preserve the States' lawmaking power over much of the same regulation.").

Unlike statutes, regulations promulgated by federal administrative agencies, such as the OCC, are given deference when the agency chooses to define its own instructions to guide others in interpreting its regulations. "It is settled that courts should give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with the enforcement of that statute." *Clarke v. Secs. Indus. Ass'n*, 479 U.S. 388, 403-04 (1987) (quotation marks and citation omitted). "When the OCC implements a provision of the National Bank Act 'in accord with the legislature's intent,' that interpretation is entitled to deference." *Office of the Comptroller of the Currency v. Spitzer*, 396 F. Supp. 2d 383, 391 (S.D.N.Y. 2005) (citations omitted). When an agency such as the OCC offers an "interpretation of its own regulation [that] reflects its considered views," the court should accept the interpretation if convinced it is not "merely a *post hoc* ratio-

nalization." *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 171 (2007) (alteration and citation omitted).

Here, however, the OCC has promulgated a preemption regulation but has not specifically instructed how the regulation should be interpreted or applied. Because the OCC failed to provide guidance, the district court looked elsewhere, relying on an Ohio case, *Crespo v. WFS Financial, Inc.*, 580 F. Supp. 2d 614 (N.D. Ohio 2008).

[1] *Crespo* looked at a similar issue—whether an Ohio state law requiring certain post-repossession notices was preempted by federal regulation. *Crespo* followed a preemption analysis established by the Office of Thrift Supervision ("OTS"), the regulator for WFS Financial, and found the state law was preempted. *Crespo*, 580 F. Supp. 2d at 622-23. The OTS preemption analysis used in *Crespo*, and by the district court, considers whether the state law under consideration fits within a listed express preemption category. If so, the analysis ends and the savings clause is not considered. The regulation also instructs that any doubt should be resolved in favor of preemption. OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996). The district court found the court's logic in *Crespo* persuasive. *Aguayo*, 658 F. Supp. 2d at 1232-33.

The OTS, the regulator at issue in *Crespo*, acts as the primary regulator for all federal and many state-chartered thrift institutions, including savings banks and savings and loan associations under the authority of the Home Owners' Loan Act ("HOLA"). 12 U.S.C. §§ 1461-1470. While all loosely termed "banks" may look the same to a consumer, there are subtle differences between the regulation of savings and loan institutions and national bank associations, such as U.S. Bank. The primary and dispositive difference, as it relates to this case, is field preemption.

The OTS, unlike the OCC, has explicit full field preemption. *See* 12 C.F.R. § 560.2(a) ("OTS hereby occupies the

entire field of lending regulation for federal savings associations."). Field preemption, described as "the pinnacle of federal preemption," *Smith v. BAC Home Loans Servicing, LP*, ___ F. Supp. 2d ___, 2011 WL 843937, at *4 (S.D. W. Va. Mar. 11 2011), is a preemption approach "so pervasive that Congress must have intended to leave *no room* for the states to supplement it." *City of Charleston, S.C. v. A Fisherman's Best, Inc.*, 310 F.3d 155, 169 (4th Cir. 2002) (emphasis added); *see also Conference of Fed. Sav. and Loan Ass'ns v. Stein*, 604 F.2d 1256, 1260 (9th Cir. 1979) (citing *Ray v. Atl. Richfield Co.*, 435 U.S. 151, 157 (1978)) ("[I]mplicit preemption can be found where the scheme of federal regulation is so pervasive as to make reasonable the inference that there is no room for state action."). That is, in the absence of the presumption *against* preemption, full field preemption effectively gives the court a presumption *of* preemption. This presumption of preemption is specifically embodied in the OTS rule used by the district court, which states: "This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c) [the savings clause]. For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption." 61 Fed. Reg. at 50966-67.

However, while the OTS and the OCC regulations are similar in many ways, *compare* 12 C.F.R. § 560.2(b), (c), *with*, 12 C.F.R. § 7.4008(d), (e), the OCC has explicitly avoided full field preemption in its rulemaking and has not been granted full field preemption by Congress. *Compare* 12 C.F.R. § 560.2(a) (occupying the field) *with, e.g.*, OCC, Final Rule, 69 Fed. Reg. 1904-01, 1910-11 (Jan. 13, 2004), 2004 WL 50763 ("[W]e decline to adopt the suggestion of these commenters that we declare that these regulations 'occupy the field' . . . ."). "The language employed by the OCC in its regulations and interpretive letters evidences that application of a more narrow preemption analysis is more appropriate than [the OTS preemption analysis] applied in *Silvas* [*v. E\*Trade Mortg. Corp.*, 514 F.3d 1001 (9th Cir. 2008)]," where the

OTS "had specifically defined a proper preemption test to be employed." *Gutierrez v. Wells Fargo Bank, N.A.*, 2008 WL 4279550, at *12 (N.D. Cal. 2008).

Because of this difference in field preemption, courts have been cautious in applying OTS analysis to OCC regulations. *Id.* "Courts have cautioned against wholesale application of an OTS/HOLA analysis in the OCC context." *Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1083 (C.D. Cal. 2009). One California court refused to follow an approach similar to the one used by the district court here, drawing a distinction between interpreting an OCC regulation and a congressional statute or OTS regulation issued under the exclusive HOLA "cradle to grave" regulatory authority. *Hood v. Santa Barbara Bank & Trust*, 49 Cal. Rptr. 3d 369, 379 n.5 (Ct. App. 2006). Because OCC regulations are not interpreted under the broad umbrella of field preemption, *Hood* suggested instead that the express preemption provisions in OCC regulations must be considered together with the savings clause— something the district court here refused to do. *Id.*; *Aguayo*, 658 F. Supp. 2d at 1233 n.3, 1234.

Instead, the district court followed the OTS-defined preemption analysis. "When applying its own preemption analysis under HOLA, 12 C.F.R. § 560.2, the OTS first considers whether the state law is covered by the list of expressly preempted areas. 61 Fed. Reg. at 50966. If the state law fits in the list of laws preempted, then the analysis is over. *Id.* Courts need not consider whether the state law also fits under the areas listed in the savings clause." *Aguayo*, 658 F. Supp. 2d at 1234. Because the district court had already found the Rees-Levering notices were expressly preempted under the language in 12 C.F.R. § 7.4008(d)(2)(viii), the district court refused to consider the savings clause language in Subsection (e) that explicitly saves "[r]ights to collect debts" from preemption. *Id.* at 1234.

**[2]** We agree with courts that have refused to apply the OTS preemption analysis when analyzing OCC regulations.

The OTS preemption analysis, established under the guise of the full field preemption, allows the OTS to more stringently limit a court's ability to review preemption questions by foreclosing consideration of the savings clause. Furthermore, the OTS, again with the benefit of full field preemption, has instructed that all doubts are to be resolved in favor of preemption. 61 Fed. Reg. at 50966-67.

**[3]** Not so with the OCC which has explicitly disavowed full field preemption. The better course of action with the OCC is to employ the standard canon of construction that requires a reviewing court to read a statute or regulation in its entirety when performing a preemption analysis which, in this case, requires the court to consider both the express preemption and savings clauses together. *Metro. Life Ins. Co.*, 471 U.S. at 739-40. This complete reading of the regulation allows the court to determine the true intent of the regulation.

Furthermore, the district court's reasons for choosing to apply the OTS preemption analysis, though well intentioned, do not account for a significant but subtle distinction between the OTS and OCC regulations. The district court noted the regulations considered in *Crespo* and in this case are "strikingly similar" and the list of state laws preempted in both regulations is "nearly identical." *Aguayo*, 658 F. Supp. 2d at 1234. The court also stated: "The same is true with state laws not preempted." *Id.* This last point is not accurate.

While the list of preempted state laws is substantially similar and each regulation contains a "savings clause" of state laws that are not preempted, Section 7.4008(e)(4) of the OCC regulation explicitly saves state laws regarding "rights to collect debts." The corresponding OTS savings clause, 12 C.F.R. § 560.2(c), makes no such preemption exception. When the savings clause speaks to the very topic of the state law being considered—collection of a debt through repossession—and without a specific mandate to conduct the preemption analysis in the narrow form established by the OTS, it is logical that

we should consider the entirety of the regulation in order to understand its purpose. *See Pilot Life Ins. Co.*, 481 U.S. at 51.

### 2. *Savings Clause*

Turning to the savings clause, we take guidance from the OCC itself with respect to the agency's purpose for excluding state debt collection laws from preemption. When discussing the language differences between the proposed rule and final adopted rule in Section 7.4008, the OCC stated:

> One category of state law included in the proposed list of state laws generally not preempted was 'debt collection.' Consistent with Supreme Court precedents addressing this type of state law, we have revised the language of the final rule to refer to national banks' 'right to collect debts.'

69 Fed. Reg. at 1912 (footnote omitted). The OCC's reference to Supreme Court precedent was *National Bank v. Commonwealth*, 76 U.S. (9 Wall.) 353, 362 (1869), which held national banks "are subject to the laws of the State, and are governed in their daily course of business far more by the laws of the State than of the nation. . . . Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts, are all based on State law." *See also Atherton v. Fed. Deposit Ins. Corp.*, 519 U.S. 213, 222-23 (1997) ("[F]ederal banks 'are subject to the laws of the State, and are governed in their daily course of business far more by the laws of the State than the nation.' ") (quoting *Nat'l Bank*, 76 U.S. (9 Wall.) at 362)).

**[4]** Indeed, despite U.S. Bank's arguments to the contrary, debt collection, and specifically the right to repossess property that is the subject of a secured transaction, has deep roots in common law and remains a fixture of state, not federal, law. *See Adams v. S. Cal. First Nat'l Bank*, 492 F.2d 324, 330 nn.11-12 (9th Cir. 1973) (citing cases and discussing the his-

tory of self-help repossession in common law and eventual codification in the California Commercial Code). In virtually every state, laws governing repossession of property are found in that particular state's adoption of some or all of the Uniform Commercial Code ("UCC"). *See* 1 Eldon H. Reiley, *Security Interests in Personal Property* §§ 1.1, 1.3 (2010) (describing the combination of private and quasi-public bodies that produce the uniform code, which in turn is adopted by individual state legislatures).

Oddly, U.S. Bank does not dispute that it is subject to the UCC, despite its purpose as a model code that is ultimately only effective when adopted as state law. However, U.S. Bank, citing an OCC interpretive letter, argues it is subject to the UCC, and therefore state law, only when a state chooses to adopt the UCC in its true "uniform" model code structure but not when a state, such as California, chooses to modify sections of the UCC through its legislative actions. OCC Interpretive Letter No. 1005, 2004 WL 3465750 (June 10, 2004).

This argument fails for two reasons. First, the OCC interpretative letter is narrowly tailored to answer the question of whether the uniform UCC provisions are preempted—it explicitly does not address "non-uniform provisions that individual states may adopt and elect to include in the body of their state commercial code." OCC Interpretive Letter No. 1005, at n.2. That is, U.S. Bank cannot use the OCC's letter to claim that the OCC has stated it is only subject to the UCC if it is adopted in an unmodified form.

Second, U.S. Bank's argument goes too far. What, if any, law would apply to U.S. Bank's post-repossession actions in the state of California? It would not be bound by state law as enacted by the California legislature, nor would it be operating under any specific federal law because no federal law governs self-help repossession. Tellingly, U.S. Bank fails to identify what law applies with respect to repossessions and

the notices due a borrower after a repossession when a state chooses to adopt a nonuniform version of the UCC.

**[5]** While the OCC could have included a clear indication of its intent to preempt debt collection documents, instead it used a vague "credit-related document" term in the express preemption subsection. The OCC's discussion of its implementation of Section 7.4008 makes clear that the OCC contemplated debt collection activities but explicitly intended to save them from preemption. This is so because, after promulgating the preemption rule, the OCC explained that the regulation's savings clause language was intended to preserve "undiscriminating" state laws "that form the legal infrastructure for conducting a banking or other business"—i.e., state laws that do not discriminate against banks and that instead apply equally to banks and other businesses. Statement of John D. Hawke, Jr., Comptroller of the Currency, Before the S. Comm. on Banking, Hous. & Urban Affairs, on Federal Preemption of State Laws, Washington, D.C., Sept. 2004, 23 OCC Q.J. 69, 2004 WL 3418806, at *3 (comments regarding recently promulgated OCC regulations); *see also* 69 Fed. Reg. at 1910-11, 1913.

U.S. Bank effectively concedes that the Rees-Levering repossession notice requirements do not discriminate against national banks. The Act applies to any defaulted car loan repossession, irrespective of who made the initial car loan, whether it was a local lender such as the dealership, a California state lender, or a national bank.

**[6]** Despite all the foregoing, U.S. Bank insists the challenged sections of the Rees-Levering Act do not fall under the umbrella of its "right to collect debts." 12 C.F.R. § 7.4008(e)(4). Nothing could be further from the truth—U.S. Bank chose to use its right of self-help repossession under California state law to repossess Aguayo's car. The bank notified Aguayo of the debt due, with general instructions on ways to repay the debt, closely, but not completely, tracking

Rees-Levering's specific requirements. Now that it has sold Aguayo's car, U.S. Bank wishes to collect the remainder of the debt, yet now claims that while it could act under color of state law, or at least the uniform provisions of the UCC, in repossessing Aguayo's car, it no longer needs to comply with state law in collecting the remaining debt owed. We disagree. Section 2983.2 of the Rees-Levering Act is a state law, directed toward a lender's debt collection, requiring that the lender inform the borrower of the full amount of his or her "indebtedness evidenced by the contract" or "liability," Cal. Civ. Code § 2983.2(a)(1), (8), and therefore falls squarely within the OCC savings clause.

U.S. Bank's final argument is that the introductory language of the savings clause (state laws "apply to national banks to the extent that they only incidentally affect the exercise of national banks' non-real estate lending powers") precludes application of the clause because the Rees-Levering provisions do more than "incidentally affect" lending powers. Specifically, because the Rees-Levering provision bars U.S. Bank from recovering a deficiency for failing to comply with the Rees-Levering notice requirements, the Act "affects the very core of U.S. Bank's lending operations."

While it is true the Rees-Levering provisions affect U.S. Bank in some ways, we do not agree that they affect the bank's *lending* operations. There is no loan at this juncture, but merely an outstanding debt U.S. Bank has sought to recover using a remedy provided for under state law. While U.S. Bank may argue that any law that affects its ability to recover a debt necessarily affects its lending operations, that type of rule would swallow all laws—every action by the bank, due to the nature of its business, affects its ability to attract, manage, and disburse capital, and could be said to "affect" its lending operations. The bank cannot now claim its use of the state law remedy of repossession to recover a debt is permissible but then claim the same regulation that gives the bank the power to use the remedy also affects the very

core of its lending operations. Instead, as stated by the OCC, "the commercial law framework essential for conducting any business, including the business of banking, continues to apply to the operations of national banks." OCC Interpretive Letter 1082, at n.12, 2007 WL 5393636 (May 17, 2007).

### 3. *Express Preemption Clause*

While we have determined the savings clause applies with respect to the Rees-Levering Act's post-repossession notice requirements because it is a state law regarding "rights to collect debts," 12 C.F.R. § 7.4008(e)(4), our inquiry does not end there. Viewing the regulation as a whole, as discussed above, the savings clause does not act independently. Instead, the savings clause is viewed in conjunction with the express preemption clause in Section 7.4008(d). The district court erred when it held the Rees-Levering post-repossession notices were expressly preempted—that notices were "disclosures" and "credit-related documents" under the terms of Section 7.4008(d)(2)(viii).

### a. *"Disclosure"*

With little fanfare, the district court stated the "Rees-Levering post-repossession notice standards are undoubtedly disclosure requirements." We disagree.

When performing statutory interpretation, "words are uniformly presumed, unless the contrary appears, to be used in their ordinary and usual sense, and with the meaning commonly attributed to them." *Caminetti v. United States*, 242 U.S. 470, 485-86 (1917). Because OCC regulations carry the same weight as federal statutes, this interpretation rule is equally applicable here. *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985).

Applying the rule, "disclosure" is commonly defined as a "revelation," or an act of "disclosing" or "expos[ing]" some-

thing that had previously been kept secret. *Merriam-Webster's Dictionary of Law* (1996); *American Heritage Dictionary of the English Language* (4th ed. 2000). On the other hand, a "notice" is "a notification or communication of a fact, claim, demand, or proceeding," *Merriam-Webster's Dictionary of Law* (1996), or "information about a future event; warning; announcement . . . advance notification of intention to end an arrangement, contract." *Collins English Dictionary — Complete & Unabridged* (10th ed. 2009).

**[7]** While subtle, these differences are significant. Comparing the initial loan documents Aguayo signed, and the post-repossession documents U.S. Bank sent to Aguayo, these words would not be used interchangeably. That is, we would not say the document describing the initial terms of a loan is a "notice," nor would we say a post-repossession document requiring payment is a "disclosure." Rather, it would be exactly the opposite. The term "disclosure" is commonly used to refer to an informational statement of terms prior to entering a transaction; something a borrower like Aguayo would have received when signing the contract. A notice, on the other hand, is a specific communication of a claim or demand submitted to a party in the course of, or at the conclusion of, a transaction, much like the document Aguayo received demanding payment after the repossession of his car.

**[8]** The district court erred by glossing over this distinction, summarily concluding that documents containing certain information about how to redeem or reinstate the secured property "are undoubtedly disclosure requirements." *Aguayo*, 658 F. Supp. 2d at 1232. The first page of the U.S. Bank document sent to Aguayo clearly indicates that it is a "Notice," not a disclosure, of the plan to sell the car, and goes on to state a warning and a conditional demand that even if the bank sells the car, he may still owe U.S. Bank money. This makes sense because it certainly could not have been a "revelation" to Aguayo that U.S. Bank planned to sell the repossessed car and it was most certainly a warning about a future

event that evidences U.S. Bank's intent to end the contractual relationship—all of which supports the conclusion that this was a notice, not a "disclosure."

Attached to the Notice was the Redemption Letter at issue. The letter contains two boxes with itemized amounts, detailing the respective amounts Aguayo could have paid U.S. Bank to either reinstate his contract or redeem the car. The letter also contains warnings that if he chose to do neither, he may be subject to suit and liable for any remaining deficiencies after the car is sold. This letter, instead of being an offer or "disclosure" of terms, is simply a more detailed demand for payment as stated in the first page of the Notice—either Aguayo pays one calculated amount to continue the relationship in accordance with the existing contract terms, or he pays a different amount to satisfy the existing contract and end the relationship. If he fails to do either, the car will be sold and Aguayo would be required to pay any deficiency.

This usage of "notice" is supported by the relevant sections of the UCC. U.S. Bank admits that the UCC, as uniformly adopted and codified in state law, is not subject to preemption. OCC Interpretive Letter No. 1005. The UCC requirements for repossession, which were adopted by California, explicitly require the secured party to send a "notification," not a disclosure, prior to selling collateral. *See* UCC §§ 9-611-9-614; Cal. Com. Code §§ 9611-9614.

#### b. *"Credit-Related Document"*

After quickly concluding the Rees-Levering notice requirements are "disclosures" under Section 7.4008(d)(2)(viii), the district court considered whether such a notice is an "other credit-related document." *Aguayo*, 658 F. Supp. 2d at 1232. Relying again on the analysis in *Crespo*, the district court held the Rees-Levering notice requirements were expressly preempted because the post-repossession notice was a "credit-related document." *Id.* at 1233.

The pertinent section of the OTS regulation in *Crespo* pre-empts state laws pertaining to:

> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants.

12 C.F.R. § 560.2(b).

Holding that a post-repossession notice is an "other credit-related document," *Crespo* stated: "[T]he purpose of such a notice is to notify a debtor that his or her credit was revoked and that the collateral with which the debtor secured the credit is being sold, as well as to inform the debtor what he or she needs to pay in order to restore his or her credit." *Crespo*, 580 F. Supp. 2d at 623.

**[9]** There is no doubt that the OCC regulation at issue here is similar to the language in *Crespo*. For comparison, the operative part of the OCC regulation states:

> (viii) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents.

12 CFR § 7.4008(d)(2)(viii). The question then is whether the "other credit-related documents" language, both standing alone and when read with the other sections of Section 7.4008, was intended to preempt debt collection notices.

Generally, all the words used in a list should be read together and given related meaning when construing a statute

or regulation. *Schreiber v. Burlington N., Inc.*, 472 U.S. 1, 8 (1985) (quoting *Sec. Indus. Ass'n v. Bd. of Governors, FRS*, 468 U.S. 207, 218 (1984)). The choice and arrangement of words in the OCC regulation, starting with "[d]isclosure and advertising" and followed by "including," indicate that the later words are meant to be examples of types of disclosure and advertising—two words that generally mean to present information to the public, particularly before or in the process of consummating a transaction. The next terms listed—credit applications and solicitations, credit contracts and billing statements—are all documents that embody a credit application, solicitation, and ongoing lending relationship between a lender and borrower. The final clause, "other credit-related document[ ]," seems to act as a catch-all term to describe any other documents that may be used in an ongoing lending relationship.

In contrast, the Rees-Levering notification at issue was sent after the lending relationship had ended—the car had been repossessed, the lender was preparing to sell it, and the lender's primary concern was now recovery of a debt. U.S. Bank was no longer advertising, disclosing, or offering terms upon which it would like to strike a deal with Aguayo. Rather, it was simply stating the debt owed and attempting to collect that amount from Aguayo. Had the OCC wanted to expand the term "other credit-related document" to debt collection notices, it certainly could include a clear indication of its intent to do so. As discussed above, the OCC's discussion of its implementation of Section 7.4008 makes clear that the OCC specifically contemplated exemption of debt collection from preemption. There is no reason to now second guess the OCC's choice of terms.

**[10]** Review of the OTS regulation language analyzed in *Crespo*, and relied on by the district court, provides additional support that the inclusion of "other credit-related documents" was not meant to include post-repossession notices, but instead was intended to refer to documents commonly used in

establishing and maintaining an ongoing credit relationship. Unlike the OCC section, the similar OTS regulation provides additional context for that term, stating, "other credit-related documents *and laws requiring* creditors to supply copies of credit reports to borrowers or applicants." 12 C.F.R. § 560.2(b)(9) (emphasis added).

Unlike the preceding terms, the additional "and laws requiring . . ." clause is not set off by commas to indicate it was meant to be a separate category but was meant to be read together with "other credit-related documents." Traditionally, credit reports are obtained or supplied at the creation of a credit relationship and perhaps offered to a credit applicant when he or she is refused credit. *See* 12 C.F.R. pt. 202, app. C. There is little basis for supplying a credit report to an individual whose property has already been repossessed and whose lending relationship has ended. Though the court in *Crespo* did not consider this additional language or whether it modified the "other credit-related documents" term, it is difficult to discern an intent to extend the meaning of other credit-related documents to post-repossession notices when viewed in context with the other listed documents.

**[11]** Reading the express preemption and savings clauses together, we conclude that the Rees-Levering post-repossession notices are not preempted under the regulation's vague terms "disclosure" and "other credit-related documents" in light of the savings clause that clearly exempts a state's "rights to collect debts." The district court's broad reading of the terms "disclosure" and "other credit-related documents" would effectively preempt *any* document related to debt collection, something the OCC was acutely aware of when deliberately choosing the final language of the preemption rule to save such state laws. *See* 69 Fed. Reg. at 1912.

## IV.  CONCLUSION

For the reasons set forth above, we **REVERSE** the ruling granting Defendant U.S. Bank's Motion to Dismiss, and

**REMAND** the case for further proceedings consistent with this Opinion.